## Bank of Albany, et al. v. Citizens Bank of Albany.

(Decided June 24, 1921.)

### Appeal from Clinton Circuit Court.

1. Banks and Banking—Due Diligence—Endorsers.—The words "due diligence" employed in a contract for the consolidation of two state banks with reference to the effort to be used by the consolidated bank to collect the notes of one of the old banks as a condition to liability of the old bank and its stockholders therefor, construed to mean ordinary care or such diligence as is usually employed under like circumstances by an ordinarily prudent banker to protect himself from loss, and not the due diligence to hold indorsers of the negotiable instrument law then and since in force.

2.    Banks and Banking—Ordinary Care.—Proof that the new bank had notified the debtors and called upon them to renew or pay their obligations is not proof of ordinary care under the circumstances.

E. BERTRAM for appellants.

DUNCAN & BELL and S. G. SMITH for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On June 1, 1918, the Bank of Albany and the Citizens Bank of Albany were consolidated under the name of the latter pursuant to a written agreement executed on May 6, 1918, in accordance with the provisions of section 555 Kentucky Statutes. By a separate agreement the new Citizens Bank of Albany agreed to pay to the Bank of Albany for the use and benefit of its stockholders, for each of its 250 shares of capital stock, $100.00 on June 1, 1918, and $20,00 on December 1, 1918. The $20.00 per share aggregating $5,000.00 not having been paid, the Bank of Albany and its stockholders on June 5, 1919, instituted this action against the Citizens Bank to recover the $5,000.00 less an admitted credit of $302.54.

The defendant by its answer admitted its liability for the amount claimed by plaintiffs but pleaded as a set-off against same that plaintiffs were indebted to it under the 13th clause of the articles of consolidation in the sum of $4,001.49 for bad notes, and $23.39 for unpaid overdrafts of the Bank of Albany. Crediting the $5,000.00 due plaintiffs with the admitted credit of $302.54 and the two items claimed as set-offs leaves a balance of $672.58, and this amount the defendant tendered to plaintiffs in full settlement of the claim sued on. Plaintiffs refused the tender and for reply denied that the defendant had exercised due or any diligence to collect the alleged bad notes and overdrafts or was entitled to recover for same. The cause was submitted to the court without the intervention of a jury upon an agreed statement of facts. Judgment was rendered in favor of plaintiffs for $672.58, the amount due them after offsetting against their claim the amounts claimed by defendant, and plaintiffs have appealed.

The 13th clause of the articles of consolidation in so far as applicable provides that:

"Any and all bad notes or overdrafts which cannot be collected by due diligence shall be paid by the constituent corporation from which same came, and any note

not paid or renewed within six months from the first day of June, 1918, to the satisfaction of the consolidated corporation shall be deemed a bad note and any overdraft not provided for within six months as mentioned heretofore will be considered or deemed a bad overdraft.''

Whether or not defendant was entitled to credit for the asserted set-off for bad notes and overdrafts depends primarily, if not exclusively, upon the effect to be given to the words ''due diligence,'' found in the above quoted provision of the articles of consolidation. The agreed statement of facts discloses that the defendant ''has since the consolidation notified all parties owing notes and overdrafts to the Bank of Albany to call and renew or pay same by either writing the parties letters or by calling on them in person;'' that defendant ''has not instituted any legal or equitable proceedings to collect any of said notes or overdrafts,'' and that ''none of the notes turned over to the defendant, Citizens Bank of Albany, were endorsed on the back thereof, in writing or any paper attached thereto, and that each of the notes contains the provision, 'That endorsers waive demand, protest, notice of protest and legal diligence to enforce collection,' and that some of said notes were past due at the time of delivery to the Citizens Bank of Albany and that some of said notes are not yet due.''

Plaintiffs contend that they are not liable as endorsers to defendant upon the uncollected notes executed to the Bank of Albany and that the due diligence of the contract imposed upon the defendant as a condition precedent to any liability the duty of suing promptly and before December 1, 1918, upon all bad notes and of prosecuting to insolvency the makers thereof. As support for this contention we are referred only to cases decided by this court before the enactment of the Negotiable Instruments Law, when such a rule as to the liability of indorsers prevailed but which was abrogated by the enactment of that law.

Defendant contends that plaintiffs are liable as indorsers; that as a consequence the due diligence of the contract is merely the diligence required by the Negotiable Instruments Law in force when the contract was made and ever since; and that even such diligence has been waived by plaintiffs by the terms of each of the notes.

In our view neither of these contentions is sound, since the due diligence involved here is not that imposed by law and dependent upon the technical relationship of

the parties to these uncollected notes, but is that provided for between the parties by contract.

The words due diligence as employed in the contract were certainly intended by the parties to have some meaning and force. They cannot of course be construed to mean what they would have meant under the rule abrogated by the Negotiable Instruments Law as contended by plaintiffs; and to construe them to mean no more than the due diligence of that law as defendant insists would ascribe to them no meaning whatever, since it is agreed that legal diligence to enforce collection under that law was waived by the terms of the notes.

Not only so but it is further agreed that some of the notes were past due at the time of the consolidation and that some of them were not yet due when this suit was tried, yet all such notes were included in the provision of the contract for due diligence, and defendant could have done nothing looking to their collection so far as the due diligence of the Negotiable Instruments Law is concerned. The parties certainly had all of these facts in contemplation when they provided in their contract that bad notes were such as were not paid or renewed by December 1, 1918, and that plaintiffs would pay all such bad notes as could not be collected by due diligence. Hence we must construe the terms of the contract in the light of these facts. So construed, the due diligence cannot be confined as contended by plaintiffs to the six month period between June 1 and December 1, 1918, nor can it be construed as contended by defendant to have no meaning or force whatever. The conclusion is inescapable, we think, that the parties intended and the contract means that the plaintiffs would pay to defendant all notes and overdrafts, not paid or renewed by December 1, 1918, that could not theretofore or within a reasonable time thereafter have been collected by the exercise of such diligence as is usually employed under like circumstances by an ordinarily prudent banker to protect himself from loss, which means of course that he would sue or not in each instance as the financial condition of the debtors demanded in the exercise of ordinary care. That defendant did not establish such diligence by proving simply that it notified the debtors and called upon them to renew or pay these notes is at once apparent, since that only proved that they were such notes as are called bad notes, but which plaintiffs agreed to

pay only if they could not be collected by due diligence, or ordinary care.

Hence the court erred in allowing defendant to set off against plaintiff's uncontested claim all unpaid notes without proof that they could not have been collected by the exercise of ordinary care and especially is this true if, as seems to be the case, the $4,001.49 allowed defendant for uncollected notes included the $750 of notes which it is stipulated were not even due at the time of the trial.

For the reasons indicated the judgment is reversed and the cause remanded for a new trial not inconsistent herewith.